to interplead, and they would have applied to the court to take the goods in their custody, and determine the right of the respective parties to them. Abb. Shipp. 540; 2 Story, Eq. Jur. § 518; 3 Madd. Ch. Prac. tit. "Interpleader." This course was prevented by Bresch, the shipper, withdrawing the stoppage. It is the case of the holder of a fund claimed by two persons. The bailment of a transporter does not impose on the master the duty of determining whether the right of stoppage has been lost by the shipper. The master is the shipper's agent, and must obey his orders. Right of stoppage is not necessarily lost by indorsement to order. Feise v. Wray, 3 East, 93; Thompson v. Trail, 6 Barn. & C. 36; Litt v. Cowley, 7 Taunt. 169. If the master had undertaken to return the goods to the shipper, he would have incurred responsibility to the holder of the bill of lading, and vice versa; but while he held subject to the conflicting claims, he is not responsible.

November 23, 1878. THE COURT (CADWALADER, District Judge). The detention of the skins by the defendants was wrongful. There could be no rightful stoppage in transitu by reason of the former owner's insolvency. Through this wrongful detention and the consequent inability to deliver the goods to the purchaser in Philadelphia, the benefit of the sale to him was lost. He rejected the goods, as he had a right to do, and the market had fallen so that a loss, which is the measure of damages, had been suffered.

Decree accordingly.

[On appeal to the circuit court, the decree of this court was affirmed. 4 Fed. 548.]

---

## Case No. 12,465.

SCHMIDT v. The PENNSYLVANIA.

[See 4 Fed. 548.]

---

SCHMIDT (POILLON v.). See Case No. 11,241.

---

## Case No. 12,466.

SCHMIDT et al. v. SMITH.

[7 Ben. 361.] [1]

District Court, S. D. New York. June, 1874.

CHARTER PARTY—NET MEASUREMENT OF STEAMER —CARGO SPACE OCCUPIED BY COAL.

1. The owners of a steamer chartered her in London to S., for a voyage from New York to the United Kingdom or Europe, by a charter party which described the vessel as "of the net measurement of 537 tons, or thereabouts." On the arrival of the vessel in New York, the agent of S. made a written agreement with S. & D., whereby he chartered the vessel to them for a

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

voyage from New York to Europe, for £1,500, for a full and complete cargo of lawful merchandise, the difference between the £1,500 and the amount of freight on the bills of lading to be settled before sailing. The agreement, after specifying certain conditions as to the loading of the vessel, added: "All other conditions as per charter party, dated London, &c." This charter party was known to S. & D. when they made the agreement with the agent of S. When the vessel came to be loaded, it appeared that she had on board, in a part of the space which was properly for cargo, a quantity of coal weighing 200 tons, and occupying as much space as would be occupied by 150 tons in measurement of such general cargo as S. & D. put on board the vessel; and, when S. & D. had put on board cargo till the vessel was so deep that the master refused to take any more, there still remained space for 50 tons more. She sailed with a cargo of 468 tons in measurement; and, but for the carrying of the coal above spoken of, she could have carried 668 tons. A vessel can generally carry 25 per cent. of tons by measurement more than what is stated in her register as her "net measurement," which, for this vessel, would have made her 671 tons. S. & D. filed a libel against S., to recover damages for breach of the agreement made between them, claiming to recover, as such damages, the difference between the freight earned on the goods actually received on board, and that which the vessel would have earned but for her having that cargo space filled with coal. *Held,* That the agreement between S. & D. and S. was a charter of the vessel.

2. Under this contract, S. & D. were entitled to have, for their £1,500, the space of a net measurement of 537 tons for cargo; and unless they were allowed to have it, S. did not perform his covenant, that they should be allowed to carry a full and complete cargo, notwithstanding a clause in the charter, that the cargo should not exceed what the vessel "can reasonably stow and carry over and above her tackle, apparel, provisions and furniture."

3. S. & D., therefore, were entitled to recover the difference between the freight actually earned, and that which would have been earned if such covenant had been fully performed.

[This was a libel by Jacob W. Schmidt and Herman Dill against Alexander Smith, to recover freight money.]

W. R. Beebe, for libellants.
E. H. Owen, for respondent.

BLATCHFORD, District Judge. On the 19th of December, 1872, at London, the Glasgow & Cape Breton Coal & Railway Company entered into a written charter party with the respondent, in respect to the British steamship Dione. The charter party described the vessel as "the steamship called the Dione, of the net measurement of 537 tons, or thereabouts." The charter party contained an agreement, that the vessel should proceed to New York, and there load a cargo of lawful merchandise, in bulk, "not exceeding what she can reasonably stow and carry, over and above her tackle, apparel, provisions and furniture," and therewith proceed to a safe port in the United Kingdom, or a safe port on the continent of Europe, between Havre and Hamburg, both inclusive, calling for orders at Queenstown, Falmouth or Plymouth, at master's option. The rate of freight for the cargo was prescribed by the charter party.